UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOSEA T. BLACKWELL,

                        Petitioner,

-vs-                                                         Case No.  8:04-cv-955-T-17EAJ

JAMES V. CROSBY, JR.,

                        Respondent.
_____

## ORDER

This cause is before the Court on Petitioner Hosea Blackwell's  28 U.S.C. § 2254 petition for writ of habeas corpus.  Blackwell challenges his conviction and sentence entered by the Circuit Court for the Twelfth Judicial Circuit, Sarasota County, Florida.

BACKGROUND

On November 1, 2000, in case no. 00-0634, Blackwell was convicted of Attempted Sexual Battery (Use of Force Likely to Cause Serious Personal Injury) and Attempted Aggravated Battery with Great Bodily Harm or Deadly Weapon and was originally sentenced to 20 years and 5 years incarceration, respectively. Pursuant to counsel's

Motion to Correct a Sentencing Error, Blackwell was resentenced on May 14, 2001, to 15 years on count one with a 5 year sentence on count two.

On June 14, 2001, Blackwell filed a direct appeal in case no. 2D00- 5001. (Resp. Ex. 001). Blackwell's sole issue on direct appeal was whether sufficient competent evidence supported the jury's verdict. On July 12, 2001, the State filed its Answer Brief in response. (Resp. Ex. 002). On November 2, 2001, Blackwell's conviction and sentence were per curiam affirmed by the state district court of appeal. (Resp. Ex. 003); see Blackwell v. State, 806 So. 2d 472 (Fla. 2d DCA 2001)(Table).

On January 14, 2002, in case no. 00-634-F, Blackwell filed a *pro se* Motion for Postconviction relief in the State trial court pursuant to Fla. R. Crim. P. 3.850 and Memorandum of Law and Facts in Support of Motion for Postconviction Relief. (Resp. Ex. 005). Blackwell raised fourteen claims in the Rule 3.850 motion.

On January 24, 2002, the state trial court denied Blackwell's Motion for Postconviction Relief in part and directed the State to file a written response to limited issues. (Resp. Ex. 006). The order reads, in pertinent part:

> This matter is before the court on Defendant's pro se Motion for Postconviction Relief filed pursuant to Fla. R. Crim. P. 3.850 (the "Motion") and Memorandum of Law and Facts in Support of Motion for Post Conviction Relief filed on January 17, 2002.   The court has carefully considered the motion, memorandum, reviewed the court file, and is otherwise duly advised in the premises.
>
> The Defendant was found guilty, upon a jury verdict, of Attempted Sexual Battery  Use of Force Likely to Cause Serious Personal Injury and Attempted Aggravated Battery  with Great Bodily Harm or Deadly Weapon and he was originally sentenced to 20 years   and 5 years respectively in the Department of Corrections. Pursuant to counsel's Motion   to Correct a Sentencing Error, the Defendant was resentenced on May 14, 2001 to 15 years on count one with a 5 year sentence concurrent on count two. The

court's judgment  and  sentence  were  affirmed  on  appeal. (Citation unavailable).

The Defendant raises fourteen claims in his Motion for Postconviction Relief. The Defendant's claims and the court's findings with respect to those claims are as follows:

1. <u>The Defendant was denied the effective assistance of counsel by counsel's  failure to develop a coherent theory of defense, introduction of damaging  evidence  and   concession  of  the  Defendant's  guilt  without  his permission.</u>

The Defendant first contends that the only real evidence linking him to the attack   on the victim, Amy Kiser was the victim's testimony. The Defendant claims counsel  stated, during his opening statement, that the case depended on series of improbabilities and inconsistencies and then during the trial, counsel conceded the Defendant's guilt by placing the Defendant at the various locations that the victim stated she saw the Defendant at prior to the attack. The Defendant further contends his attorney conceded  various facts, in spite of his knowledge that they were untrue or incorrect contrary to the Defendant's position that he was not at the various locations and was not involved in the crime.  Finally, the Defendant contends counsel said the Defendant lied when he testified  and that the victim was not lying but confabulating.

The State is hereby directed to file a response to this issue, so that the court can  determine whether or not an evidentiary hearing is warranted. Any portions of the record  required to substantiate the State's response shall be attached to the response.

2. <u>The Defendant was denied the effective assistance of counsel by counsel's  failure to argue and preserve for appeal a suggestive out of court identification  of  the   Defendant.</u>

The  Defendant  contends  his  attorney  failed  to  file  a  motion  to suppress the  suggestive showup that occurred at the time of the Defendant's arrest. The Defendant  points to various discrepancies in the description of the "be on the lookout" bulletin and  the description given by the victim of the attack and the Defendant's actual appearance. The Defendant contends his stop by the police, his subsequent seizure and search were  unsupported by probable cause and, therefore, his arrest was illegal.

The State is hereby directed to file a response to this issue, so that the court can  determine whether or not an evidentiary hearing is warranted. Any

portions of the record required to substantiate the State's response shall be attached to the response.

3. <u>The Defendant was denied the effective assistance of counsel by counsel's failure to present a coherent theory of misidentification.</u>

The Defendant claims that at the time of his crime, there had been a series of attacks on women by an alleged black male that was ultimately linked to another individual by the name of Floyd Thomas. The Defendant contends his attorney should have used the failure to link the Defendant to the other attacks and the fact that Floyd Thomas was convicted for a crime that occurred in the general area as the Defendant's crime as evidence that the Defendant was misidentified by the victim. The Defendant contends, based upon the various time and distance descriptions of the police and victim involved in his case, that it was impossible for him to have committed the crime and his attorney failed to argue these facts to the jury.

The State is hereby directed to file a response to this issue, so that the court can determine whether or not an evidentiary hearing is warranted. Any portions of the record required to substantiate the State's response shall be attached to the response.

4. <u>Defendant was denied the effective assistance of counsel by counsel's failure to argue, object and preserve for appeal that the Defendant was a victim of racial profiling.</u>

The Defendant contends in long and somewhat circuitous claim, that because he is a black male, who was accompanying a white male at the time of his stop and subsequent arrest, that he was the victim of racial profiling. The Defendant points to the various reports of a black male's attacks on white women at or around the time of his crime and the police department's intensive efforts at catching the perpetrator of those crimes as evidence that he was somehow singled out because of his race. Further, the Defendant points to his allegedly being an outsider in the area as well as being in an area known as a "bad" neighborhood with a white male accompanying him as a racial incongruity that allegedly was used to justify his stop and subsequent arrest without a confirmatory identification taking place. The Defendant faults counsel for not filing a suppression motion to suppress the evidence obtained as a result of his unlawful arrest.

The State is hereby directed to file a response to this issue, so that the court can determine whether or not an evidentiary hearing is warranted. Any portions of the record required to substantiate the State's response shall be attached to the response.

5. <u>The Defendant was denied the effective assistance of counsel by counsel's use  of racial slurs and referencing the Defendant in a disparaging manner.</u>

The Defendant contends he "was denied the effective assistance of counsel by  counsel's use of derogatory references in talking about the Defendant to the all white jury. The Defendant points to counsel's closing argument when he referred to the Defendant as odd, dirty, unsophisticated homeless underdog from the not so beautiful underside of Sarasota. The Defendant further points to counsel's closing argument concerning picking sides and ringing bells as indicating that the Defendant was guilty.  Finally, the Defendant claims counsel acted as if he believed his client was guilty.

The Defendant's Motion is denied. The Defendant admits in his Motion that  counsel did not use any racial slurs in court against the Defendant and the transcripts attached to the Defendant's Motion do not show that counsel ever referred to the Defendant's race during the trial. (See Defendant's Motion for Post Conviction Relief, Record on Appeal Transcripts Excerpts, pp. 224-239). As a result, the Defendant's argument concerning counsel's improper racial references is denied as the Defendant has not shown that counsel improperly interjected race as a factor for the jury's decision. Further, the Defendant's argument that counsel improperly maintained his client was odd or that he was somehow less credible because of his socio-economic background is denied because there is no evidence or inference that the jury based its decision on that factor or that the Defendant was prejudiced by these allegedly improper references.

6. <u>Defendant was denied the effective assistance of counsel by counsel's failure  to call witnesses.</u>

The Defendant contends his attorney was ineffective when he failed to call witness, Eileen Kelly, a staff writer for the Sarasota Herald Tribune. The Defendant contends Ms. Kelly had written an article about the Defendant's arrest which would have shown the Sarasota Police Department's intent on pinning the series of attacks on women on the Defendant. The Defendant contends there were certain details in the article which would have been helpful in showing the time of the crime and the time of the Defendant's arrest.

The Defendant's Motion is denied. The proposed testimony of Ms. Kelly would   have been inadmissible at the trial of Defendant's case, because the statements contained in Ms. Kelly's article would be hearsay and not admissible under any exception to the hearsay rule. Further, the

Defendant does not allege that Ms. Kelly was an actual witness to any of the events surrounding his arrest.

7. <u>The Defendant was denied the effective assistance of counsel by counsel's  failure to investigate potential witnesses.</u>

The Defendant contends counsel neglected to investigate and interview and  subpoena several potential witnesses. First, the Defendant points to the ticket-taker at the Greyhound bus station, who allegedly indicated that no one at the station on the night of  the crime matched the Defendant's description. Second, the Defendant points to  personnel at the Shell Gas Station as having seen no one matching the Defendant's description at the time of the crime. The Defendant alleges that counsel knew about these potential witnesses, the favorable information they had and could have interviewed and  investigated them, but he neglected to take any action with respect to them.

The State is hereby directed to file a response to this issue, so that the court can  determine whether or not an evidentiary hearing is warranted. Any portions of the record  required to substantiate the State's response shall be attached to the response.

8. <u>The Defendant was denied the effective assistance of counsel by counsel's  failure to file a proper motion to suppress and to amend his original motion to suppress  statements.</u>

The Defendant throughout his Motion, continuously contends he was arrested  without a warrant and without a confirmatory identification taking place before he was  arrested. The Defendant vaguely contends, that as a result of his illegal arrest, statements   he gave to the police officers, his clothing as well as the identification process should  have been suppressed all because his arrest was without probable cause and was not  supported by a confirmatory identification.

The Defendant's Motion is denied. In as much as the Defendant's Motion seeks  relief based upon counsel's failure to file a motion to suppress the identification, the court  has already directed the State Attorney under ground two of this order, that relief is  denied in that the court has already ordered a State response. With respect to the other  statements of individuals concerning the arrest of the Defendant, the Defendant could not  suppress those statements as they were  independent acts surrounding his case and were not obtained in anyway from the Defendant himself. Further, since it appears from the Defendant's own motion, that no testimony concerning statements given by the Defendant was received as evidence in the trial, the

Defendant would have no basis to complain about counsel's representation. (See page six attached to Defendant's Motion for Post Conviction Relief, Record on Appeal Transcripts Excerpts). Further, although the Defendant's attorney did not file a Motion to Suppress the evidence of the Defendant's clothes, there is no allegation by the Defendant that his clothes were received in evidence against him at trial and even if they were, the allegations of the Motion establish that the seizure of the clothes was not subject to suppression because the clothes were in "plain view" of the officer in an area that he was constitutionally permitted to occupy. *Cf* Britt v. State, 673 So. 2d 934 (Fla. 1st DCA 1996). Further, dismissal of the charge would not have been a proper remedy for any alleged violation of the Defendant's constitutional rights. *See State v. Caballero,* 510 So. 2d 922 (Fla. 4th DCA 1987).

9 . Defendant was denied the effective assistance of counsel by counsel's failure to argue, object and preserve tor appellate review the State's use of perjured testimony.

The Defendant contends the State used perjured testimony to fill in the gaps in the victim's testimony concerning the events surrounding the Defendant's crime and arrest. The Defendant points to the State's knowing that the victim departed from Ft. Lauderdale, Florida rather than West Palm Beach prior to her arrival in Sarasota. The Defendant points to the fact of the victim's testimony concerning her use of a taxi and the lack of taxi fare records for a trip to the Ringling School of Arts at the time of the crime. The Defendant claims the victim did not know the name of the taxi company and could not describe the taxi cab driver.

The Defendant's Motion is denied. The Defendant's allegations do not establish that the alleged changes in the victim's testimony were material or even were perjurious  such that the State Attorney could have known that the testimony was untrue. *See Maharaj v. State,* 778 So. 2d 944, 956 (Fla. 2000) (Observing that in order to prove the State presented perjured testimony, it must be shown that the testimony was false, that the prosecutor knew the testimony was false, and that the statement was material). Further,  the Defendant's allegations do not establish how the Defendant was prejudiced such that  See Strickland v. Washington, 488 U.S. 668(1984).

10. Defendant was denied the effective assistance of counsel by counsel's failure  to preserve for appellate review that there was no probable cause for the Defendant's  arrest without a warrant.

The Defendant in essentially a repeat of his earlier claim, faults counsel for failing to object and preserve his claim that the Defendant's arrest

was not supported by a  confirmatory identification prior *to* the actual arrest. The Defendant points to various  inconsistencies in the victim's description and the Defendant's appearance and he posits  that as a result the police would have been unable to obtain an arrest warrant with the    information they had prior to the Defendant's arrest.

The Defendant's Motion is denied. First, it is not at all clear what the Defendant  alleges counsel could have sought if he had objected, because as observed in this order  under ground eight above, dismissal of the charge would have not been a permissible  sanction. See Caballero v. State, 510 *So.* 2d 922 (Fla. 4th DCA 1987). Additionally, the  Defendant's argument concerning his arrest taking place prior to the confirmatory  identification is dubious in light of the police reports attached to the Defendant's Motion which indicate that the confirmatory identification took place prior to his formal arrest.  (See attached police reports attached to Defendant's Motion for Post Conviction Relief,  Excerpts from State's Discovery).

11. The trial court abused its discretion by overruling the State's objection.

The Defendant, in a somewhat convoluted claim, alleges that the trial court committed fundamental error by overruling the State's objection to defense counsel's  statement during closing argument that essentially characterized the Defendant as a  homeless transient. The Defendant contends the court knew this statement to be untrue  and should have sustained the objection.

The Defendant's Motion is denied. The Defendant's allegations do not establish  fundamental error but are in fact not cognizable in a motion pursuant to Fla. R. Crim. P. 3.850 because this is a claim that could or should have been raised on direct appeal.  See Fla. R. Crim. P. 3.850(c).

12. Fundamental error occurred due to prosecutorial misconduct.

The Defendant claims his conviction for attempted sexual battery was caused by  the deliberate filing by the State Attorney of a higher offense severity level than warranted under the evidence. The Defendant claims that the State did not have sufficient evidence to warrant such a conviction because the victim injury points were only slight and, as a result, the State miscalculated the primary offense level points to obtain a conviction for a higher offense level primary offense.

The Defendant's Motion is denied. Prosecutorial misconduct such as the issue  presented here is not cognizable in a motion for postconviction

relief. See Sanders v.  State, 793 So. 2d 93,94 (Fla. 2d DCA 2001) citing Adams v. State, 380 So. 2d 423, 424  (Fla. 1990); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Further, the  decision to prosecute and how to prosecute is within the discretion of the State Attorney.

13. The State committed fundamental error in its Prosecution of the Defendant because of racial profiling.

The Defendant claims the State Attorney improperly used race in its prosecution of the Defendant by its charging decision as well as alleging raising the offense level due to the race of the Defendant. The Defendant contends the State's behavior constitutes  fundamental error.

The Defendant's Motion is denied. There is no evidence that the State actually used the Defendant's race in making its charging decision and there is no evidence to indicate that the Defendant was singled out for prosecution due to his race other than the Defendant's unsupported allegations. See Foster v. State, 614 So. 2d 455 (Fla. 1992) (Observing that in order to prove discriminatory intent in death penalty prosecution, the  defendant must show actual discriminatory intent in his case and must have exceptionally  clear proof).

14. The State's use of perjured testimony constituted fundamental error.

The Defendant claims, based upon the same allegations as in his Motion under  ground nine, that the State's use of the inconsistencies in the victim's testimony at trial  constituted perjury and fundamental error.

The Defendant's Motion is denied for the same reasons as given in this order under ground nine above.

Therefore, it is ORDERED and ADJUDGED:

1. The Motion, file and record conclusively establish that Defendant is entitled to  no relief on grounds 5, 6, 8, 9-14, and Defendant's Motion for Post Conviction Relief is denied with respect to those grounds.

2. The State is hereby directed to file a written response to the Defendant's Motion for Post Conviction Relief on grounds 1, 2 ,3, 4 and 7 by April 15, 2002,  with attachments from the record to support its response.

3. Although Defendant has the right to appeal the portions of this order denying  relief without a hearing, the 30-day appeal period shall be tolled until

the court has made a final disposition of the Motion after the State's response has been received.

(Resp. Ex. 006).

In summary, the state trial court summarily denied claims 5, 6, 8, 9-14 noting the record conclusively established Blackwell was not entitled to relief and directed the state to file a written response to Blackwell's claims 1-4, and 7.

On May 15, 2002, the State filed its response to Blackwell's Motion for Postconviction Relief. (Resp. Ex. 007). The same day, the State trial court entered its Order denying Blackwell's Motion for Postconviction Relief as to claims 3 and 4, and ordered an evidentiary hearing as to claims 1, 2, and 7. (Resp. Ex. 008). On November 8 and 13, 2002, an evidentiary hearing was held on the remaining claims of Blackwell's Motion for Postconviction Relief before the Honorable Robert B. Bennett. (Resp. Ex. 009). O    n January 7, 2003, the trial court filed its Supplemental Order Denying Blackwell's Motion for Postconviction Relief for his remaining claims. (Resp. Ex. 010). On January 3, 2003, Blackwell appealed the State trial court's order denying Blackwell's Motion for Postconviction relief. On August 28, 2003, in case no. 2D03-217, Blackwell filed his Initial Brief on appeal in the State appellate court challenging the state trial court's January 7, 2003, order denying Blackwell's Rule 3.850 motion. (Resp. Ex. 011). On November 26, 2003, the State filed its Answer Brief in response. (Resp. Ex. 012). On February 18, 2004, the State appellate court *per curiam* affirmed the trial court's January 7, 2003, order denying Blackwell's motion for postconviction relief. (Resp. Ex. 013). On April 26, 2004, the State appellate court's mandate was issued in case no. 2D03-217. (Resp. Ex. 014). On

April 26, 2004, Blackwell timely filed the instant 28 U.S.C. §2254 petition raising three grounds for relief.

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. Williams v. Taylor, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. However, if a claim fails to satisfy the second prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

-11-

A review of the record demonstrates that, for the following reasons, Blackwell's petition must be **DENIED**.

**Ground One: PETITIONER WAS DENIED HIS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS AN ALLEGED ILLEGAL SEARCH AND SEIZURE OF PETITIONER.** Blackwell argues he was denied effective assistance of trial counsel in violation of his Six Amendment rights as a result of counsel's failure to file a motion to suppress challenging his alleged illegal seizure by police. According to Blackwell, he was arrested without a warrant, and his seizure was not supported by a confirmatory identification prior to his actual arrest. Blackwell contends that as a result of his illegal arrest, statements he gave to police, his clothing, as well as the identification process should have all been suppressed because his arrest was without probable cause. The applicable Supreme Court standard for ineffective assistance of counsel claims is clearly established in Strickland v. Washington, 466 U.S. 688 (1984).

In its January 22, 2002, detailed order dismissing the instant claim of ineffectiveness of trial counsel pursuant to Fla. R. Crim. P. 3.850, the State trial court stated its rationale for its summary rejection under this ground (See above).

Blackwell has not presented clear and convincing evidence to show the state court's ruling resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law, or the ruling was based on an unreasonable determination of the facts in light of the evidence presented. To the contrary, the record shows the trial court correctly applied the standard outlined in Strickland to Blackwell's claim.

**Ground Two: PETITIONER WAS DENIED HIS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO ARGUE PETITIONER WAS SUBJECTED TO AN IMPERMISSIBLE IDENTIFICATION PROCESS.** Blackwell next argues he was denied effective assistance of counsel when his attorney failed to file a motion to suppress an alleged suggestive "show up" that occurred at the time of Blackwell's arrest. Blackwell contends his stop, seizure and search by police were unsupported by probable cause, therefore, his arrest was illegal. Blackwell identifies various discrepancies in the description of the "BOLO" and the description given by the victim and Blackwell's actual appearance.

At the November 8, 2002, evidentiary hearing on Blackwell's motion for state postconviction relief, defense counsel Fielding stated he was aware of the out-of-court identification of Blackwell, as a result, counsel deposed the victim on this issue. (Resp. Ex. 009 at 1002). Thereafter, counsel reviewed the circumstances in which the "show up" occurred. Id. at 1002-04. It was counsel's conclusion the facts demonstrated the out-of-court identification was proper. Id. at 1004. Fielding acknowledged Blackwell requested counsel make a motion to exclude the out-of-court identification. Id. at 1005. In response, defense counsel told Blackwell the case law supports the instant "show up", therefore, any motion challenging the identification would be meritless. Id. In addition, counsel noted that the testimony of witness Warren also independently identified Blackwell. Id. at 1006-07.

In its November 21, 2002, supplemental order denying Blackwell relief as to this claim, the State court determined the evidence did not support a determination the "show up" was impermissibly suggestive, nor that counsel was reasonably aware of the

-13-

suggestive nature of the "show up." (Resp. Ex. 010). The State trial court further determined Blackwell failed to demonstrate the outcome of the case was effected by counsel's alleged failure. Id. Because the record supports the State trial court's finding there is no reasonable argument that Blackwell was positively identified by the victim for any other reason than the fact the victim recognized Blackwell as her assailant, any motion to suppress the identification on grounds of suggestiveness would have been denied. Compare Meeks v. Moore, 216 F.3d 951 (11th Cir. 2000). Accordingly, defense counsel had no duty to bring forth such a non-meritorious motion. As a result, the record shows the State trial court correctly applied the standard outlined in Strickland to Blackwell's claim in ground two.

**Ground Three: PETITIONER WAS DENIED HIS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO DEVELOP A COHERENT THEORY OF DEFENSE, INTRODUCED DAMAGING EVIDENCE, AND CONCEDED PETITIONER'S GUILT WITHOUT PERMISSION.** Blackwell claims defense counsel originally presented Blackwell's theory of defense as a series of improbabilities and inconsistencies based on time and distance from the Greyhound station to the scene of the offence. Blackwell asserts defense counsel later abandoned this theory during cross-examination of the victim when counsel places Blackwell at the bus station. Blackwell further claims defense counsel conceded Blackwell's guilt by placing Blackwell at various locations where the victim testified she saw Blackwell prior to the offense even though Blackwell later testified he was not present at any of the

-14-

locations. Finally, Blackwell claims defense counsel told the jury Blackwell was lying on the stand and the victim was not lying but confabulating.

At the November 8, 2002, evidentiary hearing on Blackwell's State postconviction motion, Blackwell's trial counsel, Tom Fielding, testified that prior to trial he discussed the case with Blackwell at the jail in an attempt to ascertain a defense for Blackwell. (Resp. Ex. 009 at 992). Fielding stated Blackwell was not cooperative. (Resp. Ex. 009 at 993). Blackwell simply kept repeating there was no probable cause for the case. Id. When Fielding asked Blackwell what his defense was, Blackwell would merely respond there was no probable cause for the case. Id. As a result, Fielding was not able to obtain any information from Blackwell. Id.

In addition, prior to trial, Blackwell never expressly denied being at the bus station to Fielding. (Resp. Ex. 009 at 994). Only during the actual trial proceedings did Blackwell inform defense counsel he denied being at the bus station. Counsel, however, never knew what Blackwell was going to say if Blackwell testified due to Blackwell's refusal to cooperate with counsel in the preparation of Blackwell's defense. (Resp. Ex. 009 at 994-95). Consequently, during closing argument, Fielding placed Blackwell at the bus terminal as part of his trial strategy. Specifically, by placing Blackwell at the bus terminal, a good distance from the scene of the crime, if the jury accepted the victim's testimony, counsel believed it would have been physically impossible for Blackwell to have committed the crime if he remained at the bus terminal the entire time. (Resp. Ex. 009 at 995).

Defense counsel conceded he was concerned he might have attacked Blackwell's credibility when he stated Blackwell was at the bus station. Id. However, counsel was not

sure what Blackwell was going to say when he testified. After the State put on its case and after Fielding was finished cross-examining the State's witnesses, Blackwell for the first time informed counsel he wished to testify. Counsel did not even know what questions to ask Blackwell. (Resp. Ex. 009 at 996). According to counsel, Blackwell might have testified he was anywhere in the city, which could have made the matter worse. (Resp. Ex. 009 at 995). Accordingly, counsel was forced to come up with his own theory at this point in the trial and "sort of run with it." Id. Counsel had no other option at this point, and counsel determined the physical and eye-witness evidence indicated Blackwell spent the evening of the offense in the bus terminal. (Resp. Ex. 009 at 995-96).

Fielding further testified the victim's identification of Blackwell was explicit. (Resp. Ex. 009 at 997). Thus, counsel was certain the jury was convinced the victim saw Blackwell. (Resp. Ex. 009 at 998). Counsel argued the victim saw Blackwell at the bus terminal because he felt it would have been impossible for Blackwell to have gotten to the crime scene and committed the offense during the time-frame the act occurred. (Resp. Ex. 009 at 999). In defense counsel's mind, the evidence was very strong the victim saw Blackwell somewhere; therefore, counsel was concerned the jury might believe the offense really occurred at the Shell station and Blackwell was there. (Resp. Ex. 009 at 999-1000).

Moreover, based on trial strategy, counsel argued the victim was confabulating in an attempt to explain how it was possible for the victim to misidentify Blackwell as her attacker following such a traumatic event. (Resp. Ex. 009 at 1000). At the same time, counsel did not believe Blackwell's testimony was credible. The fact Blackwell kept denying he was at the bus terminal was a denial of the actual physical evidence. (Resp. Ex. 009 at

-16-

1001).   Accordingly, it was counsel's strategy to attempt to rehabilitate Blackwell's

testimony to put the best possible spin on why Blackwell may not have been 100%

forthright in front of the jury. Id.

In its November 21, 2002, order denying Blackwell relief as to this claim, the State

trial court found:

> Trial counsel might have developed a different theory of defense than
> that presented at trial had defendant in any way cooperated with counsel
> prior to trial. Trial counsel repeatedly requested the defendant provide him
> information about the case. Defendant would only say that there was no
> probable cause to support his arrest.
>
> Trial counsel formulated a cogent defense supported by the evidence
> in the case. It was a reasonable defense to present given the facts of the
> case known to counsel and defendant's refusal to cooperate with counsel
> prior to trial. Counsel never conceded defendant's guilt. Counsel never
> conceded facts known to be untrue or contrary to defendant's position.
> Counsel never knew defendant's position until the trial was underway.
>
> Defendant has failed to demonstrate that the outcome of the trial was
> effected by this alleged failure on the part of counsel.

(Resp. Ex. 010 1076-77). The State trial court found counsel's decision to place Blackwell

at the Greyhound bus terminal the night of the instant offense was a necessary strategic

or tactical choice based on the facts of the case. The court's finding is supported by the

record. Blackwell has not presented clear and convincing  evidence to show the state

court's ruling resulted in a decision that is contrary to, or involved an unreasonable

application of, clearly established federal law, or the ruling was based on an unreasonable

determination of the facts in light of the evidence presented, especially where strategy is

involved. See Strickland v. Washington, 466 U.S. 668, 689-90 (1984).

Accordingly, the Court orders:

That Blackwell's petition for writ of habeas corpus is denied.  The Clerk is directed to enter judgment against Blackwell and to close this case.

ORDERED at Tampa, Florida, on April 7, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Pro se Hosea T. Blackwell